14611.   HUNTER *v.* THE STATE.
</div>

BROYLES, C. J.   The motion for a new trial contained only the usual general grounds; the evidence, direct and circumstantial, was sufficient to authorize the jury to return the verdict rendered, and the court did not err in refusing to grant a new trial.

<div align="center">

*Judgment affirmed. Luke and Bloodworth, JJ., concur.*

DECIDED JULY 10, 1923.
</div>

Conviction of involuntary manslaughter; from Coweta superior court — Judge Roop.   April 24, 1923.

Abbie Hunter was found guilty of involuntary manslaughter in the commission of an unlawful act. The indictment charged that the defendant killed Lillie Burton, a pregnant woman, by inserting a hollow reed into her private parts and womb, and blowing air, turpentine, and water into them for the purpose and with the intent to produce a miscarriage and abortion, and that the use of such means and device was not necessary to preserve her life and was not advised by two physicians to be necessary for that purpose. It was contended on the part of the defendant that the evidence was not sufficient to show that she knew of the pregnancy or intended to commit an abortion, and that the evidence was not

sufficient to show that she caused the death. The mother of Lillie Burton testified, that Lillie had been complaining of her stomach, and they went on the train from LaGrange, where they lived, to Grantville, and walked about a mile from the depot to see " Aunt Abbie," the defendant, whom they did not know and had never seen before. The witness said: " When I got there I taken a seat on the porch; my daughter went in the house. She had a conversation with Aunt Abbie; I heard part of that conversation; I did not hear all. . . I got up and went to the door to see how she worked on female trouble. She taken some warm water in a basin and put turpentine in it and got a reed so long (indicating) and· blowed turpentine and water through there and blowed it up her womb. My daughter was lying on a pallet on the floor. . . She blew it up in her with her mouth. After she did that my daughter commenced hollowing and having hiccough right at once, right at once going out. My daughter never did speak after that, . . after she blowed that stuff up her. I can't tell exactly how long she lived, probably about fifteen minutes. . . I asked Aunt Abbie what was the matter ·with the girl, and she said she was drunk in the head. I didn't stay there no time after that; I went rushing to get somebody to carry her home. . . My daughter did not have anybody working on her in LaGrange. . . I never knew at any time that my daughter was pregnant; she never told me she was pregnant; no, sir, she was not showing. I don't know what she told Aunt Abbie; I didn't hear her tell Aunt Abbie she was pregnant. Me and my daughter and Aunt Abbie and her daughter were the only ones at Aunt Abbie's house when we went there. . . I went and got professor to come; the time professor come my daughter was dead." The defendant, in her statement at the trial, said: " She come to my house that day and stopped, and when she come in she said she was sick and had female trouble, and I went and tried to help, and the sicker she got. I never knowed any more about nothing being the matter with her than the angels in heaven. . . She said she was sick, and I went to work there to help the child, and she got sick and sicker and she died. I did not kill her."

A physician, who made an examination of the body of Lillie Burton about two days after her death, testified at some length, and said that the womb showed about four months' pregnancy;

that the fœtus or child in the normal state is in a bag of water, and one of the ways to create an abortion is to break the bag of water; that the womb showed that "some kind of instrument or something had been tampering with it;" that on the membrane on the water bag at the mouth of the womb there was a scratch which could have been made from a hollow cane, but the water bag was not ruptured; there was some separation between the womb and the attachment of the afterbirth, and abrasions were on the afterbirth, which was at the mouth of the womb instead of being at the top, and a blood clot was there; that any foreign substance injected into a blood vessel is likely to cause death; it causes death through forming a clot in the blood vessel, which is called an embolus; and if an embolus should be formed by reason of injection through a cane of turpentine or air into the womb, separating the afterbirth from the mouth of the womb, it could produce death instantly or in the course of several days; that the embolus stops the heart; that the condition of the womb probably was the cause of the death in this case, but it could have been caused by other conditions.

This case was previously before this court upon a conviction on a different indictment. *29 Ga. App.* 366.

*W. G. Post,* for plaintiff in error.

*W. Y. Atkinson, solicitor-general,* contra.